

United States Courts
Southern District of Texas
FILED

FEB 0 1 2002

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
TRANSCONTINENTAL GAS PIPE　　　)
LINE CORPORATION　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　)

# H-02 -0387

Civil Action No.

United States Courts
Southern District of Texas
ENTERED

MAY 1 5 2002

Michael N. Milby, Clerk of Court

CONSENT DECREE

Consent Decree

U.S. v. Transcontinental Gas Pipe Line Corp. (S.D. Tex.)

TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. OBJECTIVES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI. GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII. PERFORMANCE OF THE WORK BY TRANSCO . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VIII. ACCESS TO TRANSCO FACILITIES, INSTITUTIONAL CONTROLS,
AND NOTICE TO SUCCESSORS-IN-TITLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IX. REVIEW OF SUBMITTALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

X. CERTIFICATE OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XI. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XII. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

XIII. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XIV. CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

XV. COVENANT NOT TO SUE BY THE UNITED STATES OF AMERICA . . . . . . . . . . . 43

XVI. COVENANTS BY TRANSCO; EFFECT OF SETTLEMENT . . . . . . . . . . . . . . . . . . . . 47

XVII. FINANCIAL ASSURANCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

XVIII. INDEMNIFICATION OF THE UNITED STATES OF AMERICA . . . . . . . . . . . . . . . 50

XIX. ACCESS TO INFORMATION; QUALITY ASSURANCE QUALITY CONTROL;
AND RECORD RETENTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

XX. NOTICES AND SUBMITTALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

XXI. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

XXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . 57

XXIII. COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

XXIV. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

XXV. TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

XXVI. SIGNATORIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

## ATTACHMENTS

Attachment A        Protocol for the Pits and Scrubber Line Leaks in the Transco Matter

Attachment B        Quality Assurance Project Plan for the Protocol for the Pits and Scrubber
                    Line Leaks in the Transco Matter

Attachment C        Station 150 PCB Remedial Plan

Attachment D        Protocol for Remaining Stormwater Sampling for Transcontinental Gas
                    Pipe Line Corp. ("Transco") Compressor Stations

Attachment E        Table of AOCs at Compressor Stations

Attachment F        Table of Metering Stations

Attachment G        Table of PCB Stations

Attachment H        Map of Compressor Stations

Attachment I        Table of CWA Compressor Stations

# I.    BACKGROUND

A.    Whereas, Transcontinental Gas Pipe Line Corporation ("Transco") operates an interstate natural gas transmission pipeline ("Pipeline") which, as shown on the map attached hereto as Attachment H (Map of Compressor Stations), runs from Texas and Louisiana through Mississippi, Alabama, Georgia, South Carolina, North Carolina, Virginia, Maryland, Pennsylvania, and New Jersey to the New York City metropolitan area;

B.    Whereas, Transco operates this Pipeline subject to, inter alia, the jurisdiction of the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act, 15 U.S.C. § 717 et seq., and provides natural gas service to the public in accordance with certificates of public convenience and necessity;

C.    Whereas, at regular intervals along the Pipeline, Transco operates Compressor Stations that serve in part to compress or recompress the natural gas for transmission through the Pipeline.

D.    Whereas, at some Compressor Stations, Transco historically used lubricants containing polychlorinated biphenyls ("PCBs"), a practice that has now ceased;

E.    Whereas, Transco historically discarded hydrocarbon liquids from the Pipeline, used lubricants, and other materials in open pits at Compressor Stations, a practice that has now ceased;

F.    Whereas, Transco historically discarded refuse, construction debris, and other materials in debris areas at its Compressor Stations, a practice that has now ceased;

G.      Whereas, Transco historically discharged combined stormwater and non-stormwater from its Compressor Stations, a practice that has now ceased;

H.      Whereas, at compressor stations and other locations along the Pipeline, Transco operates metering and regulating facilities ("Metering Stations") which historically used meters containing mercury to monitor the flow of natural gas, and the use of mercury in those meters has now ceased;

I.      Whereas, Transco, often in cooperation with appropriate state agencies, engaged in a program over the last decade of voluntarily assessing and remediating environmental problems related to the historical practices described in Paragraphs C through H above;

J.      Whereas, the United States has reviewed certain work performed by Transco as part of the voluntary program referred to in Paragraph I and its approval of certain work is reflected in this Consent Decree;

K.      Whereas, in addition to the voluntary program referred to in Paragraph I, Transco has performed certain investigations, assessments, and remedial activities in anticipation of the settlement embodied in this Consent Decree, including those reflected in the following reports:

- Transco Mercury Quality Assurance Program Report (March 2001);

- Additional Dry-Weather Induced Flow Testing For Transco [Compressor Stations 30, 65, 80, 100, 130, 140, 150, 165, 180, and 200] (Separate reports, March 2001);

- Dry weather flow reports (Separate reports, various dates);

- Stormwater Sampling Reports (Separate reports, various dates);

- PCB Quality Assurance Project Results, Compressor Stations 45, 80, and 110 (August 23, 2001);

- Field Investigation and Data Evaluation - Transco Compressor Stations 90, 100, 130, and 140 (August 30, 2001);

- Site Assessment Report, Former Debris Area Investigation at Transco Compressor Stations 45, 50, 77, 80, and 120 (September 2001);

- Report: Sampling Non-Pit Operational AOCs (September 24, 2001);

- PCB Remediation Report - Transco Compressor Station 80 (September 24, 2001); and

- Additional Assessment and Remediation of Mercury Metering Stations (December 7, 2001)

L.      Whereas, the activities described in Paragraph K above have been reviewed by the United States and serve as partial consideration for this Consent Decree;

M.      Whereas, the United States, on behalf of the United States Environmental Protection Agency ("EPA") intends at the same time it lodges this Consent Decree to file a Complaint in this Court against Transco pursuant to the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601 et seq., the Clean Water Act ("CWA") 33 U.S.C. § 1301 et seq., and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., alleging violations of TSCA, CWA, and RCRA at Transco's Compressor Stations and Metering Stations and seeking injunctive relief and civil penalties;

N.      Whereas, Transco does not admit any liability arising out of the transactions or occurrences alleged in the Complaint; and

O.      Whereas, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that implementation of this Consent Decree will expedite the assessment and, where appropriate, the remediation of certain areas at Transco's Metering Stations and Compressor Stations, that this

Consent Decree will avoid complicated litigation between the Parties, and that this Consent

Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to RCRA Section 3008(a)

and (h), 42 U.S.C. § 6928(a) and (h); CWA Section 309, 33 U.S.C. § 1319; TSCA Sections 7 and

17, 15 U.S.C. §§ 2606 and 2616; and 28 U.S.C. §§ 1331, 1345 and 1355.

2.  Transco consents to venue in this district.

3.  Transco consents to entry of this Consent Decree and waives any and all

objections and defenses to the jurisdiction of the Court solely for purposes of the entry and

enforcement of this Consent Decree but does not admit jurisdiction for any other purpose.

## III.  OBJECTIVES

4.  The objective of this Consent Decree is to further the goals and objectives of

TSCA, CWA, and RCRA, particularly TSCA Section 2, 15 U.S.C. § 2601, CWA Sections 101,

301 and 307, 33 U.S.C. §§ 1251, 1311, and 1317, and RCRA Section 1003, 42 U.S.C. § 6902, by

requiring Transco to perform the Work required by this Consent Decree in compliance with the

applicable schedules.

## IV.  DEFINITIONS

5.  Unless otherwise expressly provided herein, terms used in this Consent Decree

which are defined in RCRA, CWA, and/or TSCA shall have the meaning assigned to them in

RCRA for purposes of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the

Transco Matter), in the CWA for purposes of Attachment D (Protocol for Remaining Stormwater

Sampling for Transcontinental Gas Pipe Line Corp. ("Transco") Compressor Stations), and in

TSCA for purposes of Attachment C (Station 150 PCB Remedial Plan).  Notwithstanding the

foregoing, whenever the terms listed below are used in this Consent Decree the following

definitions apply:

- "AOCs" mean all the metering stations and the areas of concern at the Compressor Stations identified in Attachments E (Table of AOCs at Compressor Stations) and F (Table of Metering Stations).

- "Attachments to this Consent Decree" means the following documents attached to this Decree:

  | | |
  |---|---|
  | Attachment A | Protocol for the Pits and Scrubber Line Leaks in the Transco Matter |
  | Attachment B | Quality Assurance Project Plan for the Protocol for the Pits and Scrubber Line Leaks in the Transco Matter |
  | Attachment C | Station 150 PCB Remedial Plan |
  | Attachment D | Protocol for Remaining Stormwater Sampling for Transcontinental Gas Pipe Line Corp. ("Transco") Compressor Stations |
  | Attachment E | Table of AOCs at Compressor Stations |
  | Attachment F | Table of Metering Stations |
  | Attachment G | Table of PCB Stations |
  | Attachment H | Map of Compressor Stations |
  | Attachment I | Table of CWA Compressor Stations |

- "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

- "Compressor Station" means one of the compressor stations listed in Attachment E (Table of AOCs at Compressor Stations).

- "Consent Decree" means this document; all Attachments to this document, all items approved by EPA pursuant to Section IX (Review of Submittals), and all modifications made in compliance with Section XXI (Modification).  In the event of conflict between this document and any Attachment or approved submittal, this document shall control.

- "CWA" means the Clean Water Act, 33 U.S.C. § 1251 et seq.

• "Date of Entry" means the date this Consent Decree is filed by the Clerk of the United States District Court for the Southern District of Texas after being signed by the District Judge assigned to this civil action.

• "Date of Lodging" means the date this Consent Decree, signed by all Parties, is submitted by the United States to the United States District Court for the Southern District of Texas prior to signature by the District Judge assigned to this civil action.

• "Day" or "days" as used herein shall mean a calendar day or calendar days where the period of time allowed is eleven (11) days or more. "Day" or "Days" shall mean a day other than a Saturday, Sunday, or Federal holiday where the period of time allowed is less than eleven (11) days. When the deadline for submission of a report or other deliverable falls on a Saturday, Sunday or Federal holiday, submission will not be required until the next calendar day that is not a Saturday, Sunday, or Federal holiday.

• "Effective Date of this Consent Decree" means the Date of Entry.

• "EPA" means the United States Environmental Protection Agency.

• "Existing Contamination" means any hazardous substances, pollutants or contaminants, present or existing on or under an AOC on the Date of Lodging of this Consent Decree

• "Facility" means any Compressor Station or any Metering Station.

• "Groundwater" means subsurface water that occurs beneath the water table in soils and geologic formations that are fully saturated.

• "Institutional Controls" means restrictions that are part of the corrective action for a Facility that implement, ensure non-interference with, or ensure the protectiveness of the selected corrective action. Institutional Controls may include, without limitation, (1) design, construction, operation and maintenance, and monitoring and use restrictions for or pertaining to the Facility, and (2) prohibition of residential development or any development that reasonably could be expected to attract children, including but not limited to, amusement parks, playgrounds, parks, picnic grounds, historical parks, educational tours, or attractive nuisances.

• "Metering Station" means one of the metering and regulating facilities listed in Attachment F (Table of Metering Stations).

• "Operational Considerations" means factors necessary to (1) ensure the safety of workers or other individuals at a Facility and/or (2) protect the integrity of pipeline and related equipment.

- "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral or uppercase letter.

- "Parties" means the United States and Transco and "Party" means the United States or Transco.

- "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6992k.

- "Section" means a collection of one or more Paragraphs of this Consent Decree identified by an uppercase Roman numeral.

- "Stormwater" means any and all "storm water discharges associated with industrial activity," as that term is defined at 40 C.F.R. § 122.26(a)(14), from any Facility.

- "Transco" means Transcontinental Gas Pipe Line Corporation, a corporation organized under the laws of the State of Delaware that is an interstate natural gas transmission company which owns and operates a natural gas pipeline system extending from Texas and Louisiana through Mississippi, Alabama, Georgia, South Carolina, North Carolina, Virginia, Maryland, Pennsylvania and New Jersey to the New York City metropolitan area and headquartered at 2800 Post Oak Blvd., Houston, Texas 77056. For purposes of Section XV (Covenant Not To Sue by the United States of America), "Transco" shall include its officers, directors, and employees acting within the scope of their official capacity.

- "TSCA" means the Toxic Substances Control Act, 15 U.S.C. §§ 2601 to 2692.

- "United States" means the United States of America, including its departments, agencies, and instrumentalities.

- "Work" means all activities that Transco is required to perform under this Consent Decree, except those required by Section XIV (Civil Penalty) and Section XIX (Access to Information; Quality Assurance; and Record Retention).

- "Work plan" and "workplan" mean any plan, proposal, submittal, report, or other item (other than Attachments to this Consent Decree) which specifies activities that are proposed or required to be performed under this Consent Decree and/or a schedule for performing those activities.

## V. PARTIES BOUND

6. The provisions of this Consent Decree shall apply to and be binding on the United States of America and upon Transco and its successors and assigns.

7. No change in ownership or corporate status of Transco, including, but not limited to, any lease or transfer of assets or real or personal property, shall alter Transco's obligation to comply with the requirements of this Consent Decree or Transco's liability for compliance by any successor or assign of Transco in the event such successor or assign fails to perform obligations required by the Consent Decree. While this Consent Decree is in force, any deed, title, or other instrument of conveyance utilized by Transco with respect to any Facility at which the Work is not yet certified as complete shall contain a notice that the Facility is the subject of a Consent Decree in United States District Court for the Southern District of Texas in the case of United States of America v. Transcontinental Gas Pipe Line Corp. and shall specify the civil action number. Transco shall provide a copy of this Consent Decree to the grantee prior to conveyance.

8. Transco shall notify the United States as provided in Section XX (Notices and Submittals) prior to any change in Transco's operational control or ownership, including, but not limited to, the conveyance of title, easement, leasehold or other interest, of any Facility at which Work is not yet certified complete pursuant to Section X (Certificate of Completion) or at which Institutional Controls are in place regardless of whether the Work is certified complete. This notice shall include a description of the remaining uncompleted Work (to the extent known by Transco) and any Institutional Controls in place on the property to be conveyed, leased, or otherwise alienated.

9.      Within ten (10) days after the Date of Entry of the Consent Decree, Transco shall provide a copy of this Consent Decree to its designated Project Coordinator and to each contractor hired by Transco to perform or monitor any of the Work.  After the Date of Entry of the Consent  Decree, whenever Transco hires a contractor to perform or monitor any Work, Transco shall provide such contractor a copy of the Consent Decree at least ten (10) days prior to the date the contractor commences performance or monitoring of Work.  Transco or its contractors shall provide a copy of this Consent Decree to each other entity performing Work, including, but not limited to, subcontractors, at least ten (10) days prior to such entity commencing performance of Work.

10.      Notwithstanding any retention of contractors, subcontractors, or agents to perform or monitor any Work required under this Consent Decree, Transco shall be responsible for ensuring that all Work is performed in accordance with the requirements of this Consent Decree. In any action to enforce this Consent Decree or obtain stipulated penalties hereunder, Transco shall not assert as a defense the failure of its employees, servants, agents, contractors, or subcontractors to take actions necessary to comply with this Consent Decree, unless Transco establishes that such failure resulted from a "force majeure" event as defined in Section XI (Force Majeure).

## VI.    GENERAL PROVISIONS

11.      Except as specifically provided in this Paragraph and Paragraph 65, all activities undertaken by Transco pursuant to this Consent Decree shall be performed in accordance with (i) the requirements of all applicable federal, state, and local laws, regulations, and permits including, without limitation, federal, state, and local laws and regulations governing land use,

natural resources, and the generation, management, treatment, storage, transport, and disposal of hazardous waste; (ii) the terms and conditions of all permits issued to Transco; and (iii) all applicable Occupational Safety and Health Administration and Department of Transportation regulations, including, but not limited to, 29 C.F.R. § 1910.120.  It is not, however, a requirement of this Consent Decree that Transco seek or obtain a federal or state RCRA permit for any treatment, storage, or disposal of hazardous waste at any AOC where the treatment, storage, or disposal of hazardous wastes occurred prior to the Date of Lodging.

12.    Except as provided in Paragraph 11, where any portion of the Work requires a federal, state, or local permit or approval, Transco shall be responsible for submitting timely and complete applications; for taking all other actions required by law to obtain such permits or approvals, and for using best efforts in taking all other actions necessary or appropriate to obtain all such permits or approvals.

13.    Field activities performed under this Consent Decree shall conform to all applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.  Transco and/or its contractors shall maintain and update as necessary health and safety plans approved by an industrial hygienist which cover all field activities performed under this Consent Decree.  The health and safety plans shall be made available to EPA upon request.  EPA may review the health and safety plans but will not approve them.

14.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal, state, or local law or regulation.

## VII.   PERFORMANCE OF THE WORK BY TRANSCO; OPTION FOR STATE OVERSIGHT; PROJECT COORDINATOR

15.   Transco shall implement all requirements of this Consent Decree, including all Work, in accordance with the applicable schedules. Transco's pipeline system provides natural gas service to the public in accordance with certificates of public convenience and necessity issued by FERC. In addition, Transco's pipeline system operates at high pressures and includes a wide variety of underground piping, wiring, conduits, supporting structures, and other equipment. Accordingly, Work may need to be modified to account for Operational Considerations. Where Transco determines it is necessary to modify Work due to Operational Considerations, it may submit a request to modify the Work for review and approval under Section IX (Review of Submittals). Any such request shall include (i) a detailed description of the Operational Considerations at issue, (ii) the reason the Work should not be completed, and (iii) a proposal to modify the Work that is protective of human health and the environment to the extent possible consistent with the Operational Considerations. A request to modify Work due to Operational Considerations may be combined with another submittal or may be made separately.

16.   After EPA has selected a corrective action for soil and/or groundwater pursuant to Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter) Section II(B) or III(D), the appropriate state environmental agency may, at its election, oversee implementation of the corrective action under this Consent Decree. If a state agency elects to oversee implementation of the corrective action under this Consent Decree, then the state agency shall make the initial decision under Section IX (Review of Submittals), but such decision shall not become final until reviewed and approved by the EPA Project Coordinator.

17.    Transco's Project Coordinator is:

Mark S. Nelson
Group Leader
Environmental Remediation
Transcontinental Gas Pipe Line Corporation
2800 Post Oak Blvd.
Houston, Texas  77056
Phone:  (713) 215-4563
Fax:  (713) 215-3905
Email:  mark.s.nelson@williams.com

If Transco wishes to change its Project Coordinator, Transco shall notify EPA in writing of the

name, address, and telephone number of its replacement Project Coordinator at least fifteen (15)

days before the change or within such shorter period as is necessary if the Project Coordinator

leaves the employ of Transco.  Within ten (10) days after EPA receives such notice, EPA may

notify Transco in writing that it disapproves the Project Coordinator.  EPA may only disapprove

the Project Coordinator selected by Transco if it finds that the selected Project Coordinator has

insufficient technical expertise to adequately oversee the performance of the Work or that the

selected Project Coordinator is otherwise unfit to oversee the Work due to debarment, fraudulent

conduct, history of noncompliance with environmental laws, or other similar reasons.  Transco's

Project Coordinator shall not be employed as an attorney for Transco, The Williams Companies,

Inc., or any parent or subsidiary of those corporations.  The Project Coordinator may assign

others, including consultants or contractors, to serve as his or her representative for daily

oversight of operations during the Work.  Whenever Transco's Project Coordinator signs a

document on behalf of Transco related to this Consent Decree, the Project Coordinator shall be

deemed to be acting as an authorized representative of the responsible agent of Transco within

the meaning of 40 C.F.R. § 270.11(a)(1) (2001).

18.     Transco acknowledges and agrees that nothing in this Consent Decree constitutes a warranty or representation of any kind by the United States that compliance with the requirements set forth in the Attachments will achieve compliance with all federal laws.  Subject to the covenant not to sue in Paragraph 65, compliance with the requirements of the Attachments by Transco shall not foreclose the United States from seeking compliance with all terms and conditions of applicable federal laws.

## VIII.   ACCESS TO TRANSCO FACILITIES, INSTITUTIONAL CONTROLS, AND NOTICE TO SUCCESSORS-IN-TITLE

19.     <u>Access to Transco Facilities</u>:  Transco agrees to provide EPA and/or its representatives, including contractors, access at all reasonable times to enter and move about all property at the Facilities under Transco's control and/or to which Transco has access (to the full extent that Transco has the right to grant the United States access), with due regard for safety of personnel and property and subject to Transco's normal safety requirements for movement within Facility boundaries, for any purpose relating to the implementation, monitoring, or enforcement of this Consent Decree, including, without limitation:

A.     Interviewing Transco's Project Coordinator, his/her designated representative(s) or personnel involved in field Work at the Facility;

B.     Inspecting records, operating logs and contracts related to the implementation, monitoring or enforcement of this Consent Decree;

C.     Reviewing the progress of Transco in carrying out terms of this Consent Decree;

D.     Conducting such sampling and tests as EPA and/or its representatives deem appropriate for implementation, monitoring or enforcement of this Consent Decree;

E.     Using a camera, sound recording, or other documentary equipment to make or preserve observations or measurements (Transco may utilize its own documentary

equipment in addition to any documentary equipment utilized by EPA or its representatives); and

F.    Verifying the reports and data that Transco submits to EPA.

Transco shall permit such persons to inspect and copy all records (except personnel records), files, photographs, computer records and other writings, including all sampling and monitoring data, required to implement, monitor, or enforce this Consent Decree subject only to the protections for privileged and/or confidential business information set forth in Section XIX (Access to Information; Quality Assurance; and Record Retention). Transco and/or its representatives may accompany EPA and/or its representatives whenever and wherever they are present at the Facility, but may not in any way delay or impede investigative activities authorized under this Section. Upon request at the time of sampling, Transco may obtain splits of any samples taken by EPA and/or its representatives and upon request shall be provided with copies of the results of analyses or tests made on such samples. Upon reasonable notice by EPA, Transco shall also make available to EPA at an appropriate location its employees, agents, or representatives with knowledge of material facts concerning the performance of the Work for purposes of investigation, information gathering, or interviews.

20.    To the extent that Work required by this Consent Decree must be done on property which Transco does not currently own, control, or have access to, Transco shall use best efforts, including the payment of reasonable sums of money in consideration of access, to obtain site access agreements from the owner(s) of such property for (a) itself and its contractors and (b) EPA and/or its authorized representatives and contractors. Transco shall seek to obtain such access agreements as expeditiously as practicable in order to prevent any delays in Work

required by this Consent Decree. If within thirty (30) days after Transco's initial request for access to such property, Transco cannot, despite its best efforts, secure access to property where Work is required under this Consent Decree, Transco shall within five (5) days thereafter again request access in a certified letter, return receipt requested, to the property owner. If an agreement for access to such property is not obtained within sixty (60) days after Transco's initial request for access, Transco shall notify the United States in writing. This notification shall include a summary of the steps Transco has taken in attempting to obtain access and shall request the United States' assistance in obtaining the required access. The United States may, as it deems appropriate, assist Transco in obtaining access. If the United States obtains access for Transco, Transco shall undertake the Work required under this Consent Decree on such property. If the United States does not obtain access, it shall so notify Transco in writing. No less than thirty (30) days after receiving such a notice, Transco shall submit to EPA an alternate work plan or proposed modification to the applicable work plan which accounts for the inaccessibility of the subject property. Regardless of whether access is obtained, if the United States assists Transco in its efforts to obtain access, Transco shall reimburse the United States for all reasonable costs, direct or indirect, incurred by the United States in its efforts to obtain such access. Such costs include, but are not limited to, the cost of attorney time and the amount of monetary consideration or just compensation paid.

21.     Nothing in this Section limits or otherwise affects the United States' rights of access and entry pursuant to any applicable law including, but not limited to, CWA Sections 308 and 402, 33 U.S.C. §§ 1318 and 1342; TSCA Section 11, 15 U.S.C. § 2610; RCRA Section 3007, 42 U.S.C. § 6927, and CERCLA Section 104(e), 42 U.S.C. § 9604(e).

22.     Institutional Controls:  The United States may select Institutional Controls for the purpose of meeting the Corrective Action objectives of this Consent Decree, including, but not limited to, situations where those objectives cannot otherwise be met due to Operational Considerations or technical impracticability as set forth in Attachment A (Protocol for Pits and Scrubber Line Leaks in the Transco Matter).  Transco may submit to EPA for review and approval under Section IX (Review of Submittals) a request to alter or terminate any Institutional Controls upon a showing that such Institutional Controls are no longer necessary to achieve the above objectives.

23.     If the selected Corrective Action for a Facility includes Institutional Controls on property owned by Transco or if EPA selects Institutional Controls on such property at a later date, then, before seeking a Certificate of Completion pursuant to Section X (Certificate of Completion) for that Facility or before conveying an interest in the property, whichever comes first, Transco shall contact the State where the Facility is located (hereinafter in Paragraphs 23 and 24 "applicable State") and offer to convey an easement running with the land that grants to the state the right to enforce the Institutional Controls selected for the Facility.

        A.      If the state notifies Transco that it is willing to take the easement, then within thirty (30) days after the date the notification is received, Transco shall submit to the state a draft easement which it believes is enforceable under the laws of the applicable State, which grants to the state the right to enforce the Institutional Controls selected for the Facility, and which Transco believes complies with state regulations and/or policies applicable to the conveyance.  After submitting the draft easement to the state, Transco shall make all reasonable efforts to work with the state to make any modifications to the

draft easement that are necessary to meet the conditions specified in the previous sentence. Within ninety (90) days after Transco first submits a draft easement to the state, Transco shall submit to EPA for review and approval under Section IX (Review of Submittals):

       i.     A draft easement which grants to the state the right to enforce the Institutional Controls selected for the Facility and which Transco believes complies with state regulations and/or policies applicable to the conveyance and a cover letter stating whether the state has agreed that the draft easement is acceptable; and

      ii.     Evidence showing that the land described in the easement is free and clear of all prior liens and encumbrances except (a) liens or encumbrances which do not grant rights inconsistent with the Institutional Controls selected for the subject Facility or (b) liens or encumbrances for which Transco, despite its best efforts, is unable to obtain a release or subordination (hereinafter in Paragraph 23 and 24 "Evidence of liens and encumbrances").

EPA, in consultation with appropriate state officials, will review the submittal to determine whether it complies with the conditions specified above and whether it is enforceable under the laws of the applicable State. If EPA and the state do not agree on the language of the easement, then EPA shall so notify Transco; upon receipt of such notification, Transco shall proceed with a deed restriction as provided in Subparagraph B below. If EPA and the state agree on the language of the easement, then, within fifteen (15) days after EPA approves the submittal pursuant to Section IX (Review of

Submittals), Transco shall record the easement with the appropriate recorder's office, registry of deeds, or other appropriate land records office for the county where the Facility is located (hereinafter for Paragraphs 23 and 24 "the appropriate land office"). Within thirty (30) days of recording the easement, Transco shall provide to EPA and the state a certified copy of the original recorded easement showing the clerk's recording stamps and a title insurance policy or other comparable final evidence of title showing that, as of the time the easement was recorded, the conditions of Paragraph 23(A)(ii) were satisfied.

B.      Within thirty (30) days of the date the state notifies Transco that it is not willing to take the easement or, if the state fails to respond to Transco's offer to convey an easement, within one hundred eighty (180) days after Transco first contacts the state, Transco shall submit to EPA for review and approval under Section IX (Review of Submittals):

i.      A draft deed restriction enforceable, to the extent provided by applicable law, by Transco and the United States which states that Transco shall not violate the Institutional Controls selected for the subject Facility; and

ii.     Evidence of liens and encumbrances.

EPA shall review the submittal to determine whether it complies with the conditions specified above and whether it is enforceable under the laws of the applicable State. Within fifteen (15) days after EPA approves the submittal pursuant to Section IX (Review of Submittals), Transco shall record the deed restriction with the appropriate land office.  Within thirty (30) days of recording the deed restriction, Transco shall

provide to EPA and the state a certified copy of the original recorded deed restriction showing the clerk's recording stamps and a title insurance policy or other comparable final evidence of title showing that, as of the time the easement was recorded, the conditions of Paragraph 23(B)(ii) were satisfied.  It is a requirement of this Consent Decree that Transco comply with the deed restriction.  It is also a requirement of this Consent Decree that, if Transco conveys by deed, title, or other instrument an interest in any Transco Facility (or portion thereof) to which Institutional Controls are required pursuant to this Consent Decree, including, but not limited to, fee interests, leasehold interests, and mortgage interests, then Transco shall condition such conveyance upon compliance with the deed restriction and shall make this condition enforceable, to the extent provided by applicable law, by both Transco and the United States.  Transco shall, if so requested by the United States, enforce the deed restriction against the party to whom the interest was conveyed and against any subsequent holder of that interest.  By motion to this Court to enforce the obligations that survive termination of this Consent Decree, the United States may enforce the requirements of this Subparagraph after the Consent Decree has terminated.

24.     If the selected Corrective Action for a Facility includes Institutional Controls on property owned by persons other than Transco or if EPA selects Institutional Controls on such property at a later date, Transco shall use best efforts to secure from such persons the agreements and easements set out in this Paragraph:

A.       Within sixty (60) days after Institutional Controls are selected for a

Facility, Transco shall use best efforts to obtain an agreement enforceable, to the extent

provided under applicable law, by Transco and the United States, to:

i.       Provide access thereto for Transco and the United States on behalf

of EPA and their representatives (including contractors) for the purpose of

conducting any activity related to this Consent Decree including, but not limited

to, those activities listed in Paragraph 19;

ii.       Refrain from using the property at issue in any manner that would

interfere with or adversely affect the implementation, integrity, or protectiveness

of the corrective actions to be performed pursuant to this Consent Decree. Such

restrictions include, but are not limited to, all applicable Institutional Controls.

B.       Transco shall also use best efforts to obtain an easement running with the

land that is enforceable under the laws of the applicable State and grants the right to

enforce the Institutional Controls selected for the Facility. The easement is to be

conveyed preferably to the applicable State or to Transco in the case where the State does

not accept such an easement or the property owner will not provide such an easement to

the State, but will provide it to Transco. The following procedures shall be followed:

Before seeking a Certificate of Completion pursuant to Section X (Certificate of

Completion) for that Facility, Transco shall contact the applicable State and offer to

attempt to obtain this easement for the State. Within thirty (30) days of receiving the

State's response, or, in the event that the State does not respond to Transco's offer, no

later than one hundred and twenty (120) days after making the offer to the State, Transco

shall use best efforts to acquire from the property owner such an easement, preferably for the State, or for Transco. If the property owner will convey and the State will accept such an easement, Transco shall proceed in accordance with Subparagraph B(i); if the property owner will convey such an easement to Transco but not the State, or the State does not agree to accept such an easement, Transco shall proceed in accordance with Subparagraph B(ii); if the property owner is unwilling to convey an easement to either the State or Transco, Transco shall proceed solely in accordance with Subparagraph A, above.

       i.      If the state notifies Transco that it is willing to take the easement, then within ninety (90) days after the date the notification is received, Transco shall use best efforts to obtain for the state an easement running with the land which Transco believes is enforceable under the laws of the applicable State, which grants to the state the right to enforce the Institutional Controls selected for the Facility, and which Transco believes complies with state regulations and/or policies applicable to the conveyance. If Transco is able to obtain the easement, it shall submit to the state a draft easement which meets the conditions of the previous sentence and shall make all reasonable efforts to work with the state and the property owner to make any modifications to the draft easement that are necessary to meet the conditions specified in the previous sentence. Within ninety (90) days after Transco first submits a draft easement to the state, Transco shall submit to EPA for review and approval under Section IX (Review of Submittals):

a.      A draft easement which grants to the state the right to

enforce the Institutional Controls selected for the Facility and which

Transco believes complies with state regulations and/or policies applicable

to the conveyance and a cover letter stating whether the state and the

property owner has agreed that the draft easement is acceptable; and

b.      Evidence of liens and encumbrances.

EPA, in consultation with appropriate state officials, will review the submittal to

determine whether it complies with the conditions specified above and whether it

is enforceable under the laws of the applicable State.  If EPA and the state do not

agree on the language of the easement, then EPA shall so notify Transco; upon

receipt of such notification, Transco shall proceed under Subparagraph B(ii)

below to attempt to obtain for itself an easement running with the land which it

believes is enforceable under the laws of the applicable State and grants to

Transco the right to enforce the Institutional Controls selected for the Facility.  If

EPA and the state agree on the language of the easement, then, within fifteen (15)

days after EPA approves the submittal pursuant to Section IX (Review of

Submittals), Transco shall record the easement with the appropriate land office.

Within thirty (30) days of recording the easement, Transco shall provide to EPA

and the state a certified copy of the original recorded easement showing the

clerk's recording stamps and a title insurance policy or other comparable final

evidence of title showing that, as of the time the easement was recorded, the

conditions of Paragraph 24(A)(i)(b) were satisfied.

ii.     Within thirty (30) days of the date the state notifies Transco that it is not willing to take the easement or, if the state fails to respond to Transco's offer to obtain an easement, within one hundred eighty (180) days after Transco first contacts the state, Transco shall use best efforts to obtain an easement running with the land which is enforceable under the laws of the applicable State and grants to Transco the right to enforce the Institutional Controls selected for the Facility.  If Transco is able to obtain the easement, then, within thirty (30) days Transco shall submit to EPA for review and approval under Section IX (Review of Submittals):

a.     A draft easement running with the land which grants to Transco the right to enforce the Institutional Controls selected for the Facility; and

b.     Evidence of liens and encumbrances.

EPA shall review the submittal to determine whether it complies with the conditions specified above and whether it is enforceable under the laws of the applicable State.  Within fifteen (15) days after EPA approves the submittal pursuant to Section IX (Review of Submittals), Transco shall record the easement with the appropriate land office.  Within thirty (30) days of recording the easement, Transco shall provide to EPA a certified copy of the original recorded easement showing the clerk's recording stamps and a title insurance policy or other comparable final evidence of title showing that, as of the time the easement was recorded, the conditions of Paragraph 24(A)(ii)(b) were satisfied.  Transco

shall, if so requested by the United States, enforce the easement against the owner of the subject property.  By motion to this Court to enforce the obligations that survive termination of this Consent Decree, the United States may enforce the requirements of this Subparagraph after the Consent Decree has terminated.

25.　For purposes of Paragraphs 23 and 24, "best efforts" includes the payment of reasonable sums of money in consideration of obtaining agreements for the subordination of prior liens and encumbrances, agreements under Paragraph 24(A), or, for property not owned by Transco, the easement required by Paragraph 24 (B).  If, within sixty (60) days after Transco is required to begin efforts to obtain such agreements and/or easements, Transco has not been successful and has not already provided the United States with a summary of the circumstances of such failure in a submission required under Paragraphs 23 and 24, then Transco shall provide to the United States a written a summary of the steps Transco took to attempt to comply with Paragraph 23 or 24.  The United States may, as it deems appropriate, assist Transco in obtaining such agreements and/or easements.  Transco shall reimburse the United States for all reasonable costs incurred, direct or indirect, by the United States in obtaining such agreements and/or easements including, but not limited to, the cost of attorney time and the amount of monetary consideration or just compensation paid.  Once Transco has recorded an easement or deed restriction approved by EPA pursuant to Section IX (Review of Submittals), it shall not thereafter be subject to stipulated penalties if it is determined that the language of the easement or deed restriction as approved by EPA is not enforceable.

26.     Subject only to the covenants not to sue in Paragraph 65, the United States retains all its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

27.     <u>Notice to Successors-in-Title</u>: Each deed, title, or other instrument conveying an interest in any Transco Facility (or portion thereof) to which Institutional Controls are required pursuant to this Consent Decree, including, but not limited to, fee interests, leasehold interests, and mortgage interests, shall give the grantee written notice of (1) this Consent Decree; (2) any instrument by which an interest in real property has been conveyed that confers a right of access to the Facility pursuant to this Section; and (3) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property pursuant to this Section. At least thirty (30) days prior to any such conveyance, Transco shall give written notice to the United States of the proposed conveyance, including the name and address of the grantee, and the date on which the grantee was notified as required by this Paragraph. In the event Transco conveys an interest in a Facility, Transco shall remain responsible for fulfilling all its obligations under this Consent Decree, including , but not limited to, its obligations to provide access pursuant to Paragraph 19 and to implement Institutional Controls.

## IX.    REVIEW OF SUBMITTALS

28.     EPA shall review items (including, but not limited to, work plans and reports required by Attachments A-D of this Consent Decree) submitted by Transco for review and approval pursuant to this Consent Decree. With regard to items which Transco is required to provide to state environmental agencies pursuant to Paragraph 33(b), EPA shall not issue a

decision regarding such items until the environmental agency for the state in which the facility is located has had at least sixty days to review and provide comments. EPA may consider any comments provided by the environmental agency for the state in which the facility is located when making a decision regarding the item. After review of any item which is required to be submitted for approval pursuant to this Consent Decree, EPA shall: (a) approve the item, in whole or in part; (b) approve the item subject to conditions specified in the approval notice; (c) modify the item to cure the deficiencies; (d) disapprove the item, in whole or in part, directing that Transco modify it; or (e) any combination of the above. EPA shall notify Transco in writing of its decision regarding each item submitted for review, and if EPA does not approve the item in whole, the notice shall specify those portions of the item that have not been approved and the reasons for not approving such item.

29.    In the case of an item which has been approved in whole by EPA, Transco shall proceed to take all actions required by the item approved.

30.    In the case of an item that has been approved subject to specified conditions or that has been modified and approved by EPA, Transco shall commence implementation of the Work required by the item in accordance with the approved schedule no later than forty-five (45) days after receipt of notice of the decision by EPA. Transco may also invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution) with respect to EPA's decision. Regardless of whether Transco invokes such dispute resolution procedures, if Transco fails to timely commence implementation of the Work required by the item approved subject to specified conditions or modified and approved, Transco shall be liable for any stipulated penalties demanded under Section XIII (Stipulated Penalties).

31.    a.    In the case of an item which has been disapproved, in whole or in part, by EPA, Transco shall, within forty-five (45) days of receipt of the notice of disapproval, correct the deficiencies and resubmit the item for approval. Transco may also invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution) with respect to a notice of disapproval. Regardless of whether Transco invokes such dispute resolution procedures, if it fails to timely correct the deficiencies specified in the notice of disapproval and resubmit the item, (i) Transco shall be liable for any stipulated penalties demanded under Section XIII (Stipulated Penalties) and (ii) EPA may modify and approve the item. An item that is resubmitted with the same deficiencies which were identified in the notice of disapproval or with substantially similar deficiencies shall be deemed to have never been submitted for purposes of calculating stipulated penalties.

       b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 28, Transco shall proceed, if so directed by EPA in the notice, to take any action required by any non-deficient portion of the item.

       c.    In the event that a resubmitted item, or portion thereof, is disapproved, EPA may again require Transco to correct the deficiencies, in accordance with the procedure set forth in this Paragraph. EPA may also approve the item subject to conditions specified in the approval notice or modify and approve the item as set forth in Paragraph 28 above. In the event that EPA approves the item subject to specified conditions or modifies and approves the item, Transco shall commence implementation of the Work required by the item in accordance with the schedule set forth in the item as approved within forty-five (45) days of receipt of notice of EPA's decision. Transco may

also invoke the dispute resolution procedures set forth in Section XII (Dispute

Resolution) with respect to a decision by EPA pursuant to this Subparagraph.  Regardless

of whether Transco invokes such dispute resolution procedures, if Transco fails to timely

re-submit the item or to implement the Work required by the item as approved, Transco

shall be liable for any stipulated penalties demanded under Section XIII (Stipulated

Penalties).

32.    All items required to be submitted to EPA for review and approval under this

Consent Decree shall, upon approval, approval subject to specified conditions, or modification

and approval by EPA, be enforceable under this Consent Decree.  In the event EPA approves;

approves subject to specified conditions; or modifies and approves a portion of an item required

to be submitted to EPA under this Consent Decree, the approved or modified portion shall be

enforceable under this Consent Decree.  Transco retains the right to invoke dispute resolution

regarding all items it is required to submit for review and approval under this Consent Decree.

33.    a.    Transco shall send three (3) copies of each document required  to be

submitted for review and approval pursuant to this Consent Decree, including work plans,

reports, approvals, disapprovals, and other correspondence to

> Multimedia Enforcement Division
> Office of Enforcement and Compliance Assurance
> Office of Regulatory Enforcement
> United States Environmental Protection Agency
> USEPA Ariel Rios Bldg (2248-A)
> 1200 Pennsylvania Ave, N.W.
> Washington, D.C.  20004
> Attn:  Transco Project Coordinator

b.      Transco shall send one (1) copy of each document required to be submitted for review and approval pursuant to Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter) to the environmental agency for the state in which the facility is located. The copy for the state environmental agency shall be sent at the same time as the document is submitted to EPA.

c.      EPA shall send one copy of each document responding to a submittal from Transco to Transco's Project Coordinator.

34.    All documents submitted by Transco to EPA for review and approval under this Consent Decree shall be signed by Transco's Project Coordinator and shall include the following certification statement:

> I certify under penalty of law that this document and all attachments were prepared under my direction and supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based upon my inquiry of either the person or persons who manage the system and/or the person or persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I further certify, to the best of my knowledge and belief, that this document is consistent with the applicable requirements of the Consent Decree entered in United States of America v. Transcontinental Gas Pipe Line Corp. Civil Action No. [insert civil action no.] in the United States District Court for the Southern District of Texas. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## X.    CERTIFICATE OF COMPLETION

35.    After Transco concludes that the Work required at a particular Facility has been fully performed, Transco shall submit for review and approval a request for a certificate of completion. The request shall include a written certification by Transco's Project Coordinator that all Work required by the Consent Decree at the Facility has been completed. The request

shall also include a list of all items related to the Facility (including, but not limited to, work plans and reports) approved by EPA pursuant to Section IX (Review of Submittals) and the dates of related correspondence from EPA.  Transco may combine requests for certificates of completion for multiple Facilities.

36.     In coordination with Transco, EPA may inspect the Facility(ies) to determine whether the Work has been completed.

37.     If EPA has not issued a decision pursuant to Section IX (Review of Submittals) on a request for a certificate of completion submitted by Transco in accordance with Paragraph 35 within one hundred eighty (180) days after the date EPA receives the request, Transco may apply to the Court for an order compelling EPA to decide, notwithstanding the requirements of Section XII (Dispute Resolution).

38.     If, after review of the request for a certificate(s) of completion and any inspection, EPA determines that Transco has not completed the Work, EPA will notify Transco in writing of that portion of the Work not yet completed.

39.     If EPA concludes, based on the initial or any subsequent request for a certificate of completion by Transco, that all Work required by the Consent Decree has been completed at a Facility, EPA will issue the requested certification of completion.

XI.    **FORCE MAJEURE**

40.     "Force majeure," for purposes of this Consent Decree, is defined as any event (including, but not limited to, fire, unusual delay in transportation, adverse weather conditions, unavoidable casualties, failure to obtain, or a delay in obtaining, a permit or authorization to proceed, and acts of God, war or riot) arising from causes beyond the control of Transco, any

entity controlled by Transco, or Transco's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Transco's best efforts to fulfill the obligation. Failure to obtain or delay in obtaining a permit or authorization to proceed shall not in any event be a force majeure event if Transco failed to apply timely for the permit or approval or failed to provide in a timely manner all information required to obtain the permit or approval. The requirement that Transco exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of a potential force majeure event (a) as it is occurring and (b) following the potential force majeure event, such that the delay is minimized to the greatest extent practicable. "Force Majeure" does not include financial inability to complete the Work.

41.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Transco shall orally notify the EPA Project Coordinator or, in the event that the Project Coordinator is unavailable, the offices of the Director of the Multi Media Division, United States Environmental Protection Agency at 202/564-2418 (or such other person as EPA designates in a written notice to Transco), within seven (7) days of when Transco first knew that the event might cause a delay. Within seven (7) days thereafter, Transco shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Transco's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Transco, such event may cause or contribute to an endangerment

to public health, welfare or the environment. Transco shall include with any notice all

documentation that is within the custody or control of Transco, any entity controlled by Transco,

or any contractor of Transco that Transco contends supports its claim that the delay was

attributable to a force majeure and that is available at the time notice is required. Failure to

comply with the above requirements shall preclude Transco from asserting any claim of force

majeure for that event for the period of time of such failure to comply, and for any additional

delay caused by such failure. Transco shall be deemed to know of any circumstance of which

Transco, any entity controlled by Transco, or any contractor performing Work for Transco under

this Consent Decree knew or should have known.

42.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure

event, the time for performance of the obligations under this Consent Decree that are affected by

the force majeure event will be extended by at least such time as is necessary to complete those

obligations, and EPA will notify Transco in writing of the length of the extension, if any, for

performance of the obligations affected by the force majeure event. An extension of the time for

performance of the obligations affected by the force majeure event shall not, of itself, extend the

time for performance of any other obligation. If EPA does not agree that the delay or anticipated

delay has been or will be caused by a force majeure event, then EPA will notify Transco in

writing of this decision and the reasons for the decision.

43.     If Transco elects to invoke the dispute resolution procedure set forth in

Section XII (Dispute Resolution) in connection with EPA's decision related to a force majeure

submittal, it shall do so no later than thirty (30) days after receipt of EPA's notice pursuant to

Paragraph 42. In any such proceeding, Transco shall have the burden of demonstrating by a

preponderance of the evidence that the delay or anticipated delay has been or will be caused by a

force majeure event, that the duration of the delay or the extension sought was or will be

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the

effects of the delay, and that Transco complied with the requirements of Paragraphs 40 and 41,

above.

## XII.  DISPUTE RESOLUTION

44.    Transco may dispute all decisions made or actions taken by the United States

pursuant to this Consent Decree in accordance with the procedures set forth in this Section  This

Section shall not apply to actions by the United States to enforce obligations that have not been

disputed in accordance with this Section.  Thirty (30) days after either a decision is issued by

EPA  under Section IX (Review of Submittals) or after EPA informs Transco that it is in

violation of any provision of this Consent Decree, EPA's decision or determination of violation

shall be final and not subject to dispute resolution unless Transco has invoked dispute resolution

pursuant to this Section.

45.    The dispute resolution procedures provided for herein shall be invoked by

Transco giving written notice of a dispute to the EPA Project Coordinator as provided in this

Paragraph.  The notice shall list the specific issues in dispute, shall state Transco's position with

regard to each disputed issue, and shall set forth a summary of the basis for Transco's position.

EPA shall acknowledge receipt of the notice and the parties shall make all reasonable efforts to

schedule a meeting to discuss the dispute informally not later than ten (10) calendar days from

the receipt of such notice.

46.     Disputes submitted to dispute resolution shall, in the first instance, be the subject of informal negotiations between the parties.  Such period of informal negotiations shall extend thirty (30) days from the date of the first meeting between the parties, unless the parties agree in writing to shorten or extend this period.  EPA, in its sole discretion, may, by notice to Transco, shorten the period for informal negotiations if it finds that there is an immediate threat to the environment.  The parties may be represented in the informal negotiations by their Project Coordinators.  In the event that the parties are unable to reach agreement during such informal negotiation period, the United States shall provide Transco with a written summary of its position regarding the issues in dispute and shall identify all information upon which EPA relied in making the disputed decision.

47.     If the parties are unable to reach agreement through informal negotiations pursuant to Paragraph 46, the position advanced by the United States shall be considered binding unless, within thirty (30) days of Transco's receipt of the written summary of the United States' position, Transco files with this Court a petition which lists the specific issues in dispute, includes the written summary of the United States' position, and sets out Transco's position.  The United States shall respond to the petition within thirty (30) days of receipt.

48.     In the case of any dispute submitted for judicial review, the Court shall determine the applicable standard and scope of review for resolving the dispute.  With regard to (1) disputes regarding items requiring approval by EPA under this Consent Decree including, but not limited to, disputes regarding the adequacy or appropriateness of work plans and procedures to implement Work and (2) disputes regarding the selection, evaluation, implementation, performance, or adequacy of any Work, there shall be a rebuttable presumption (i) that Transco

shall have the burden of demonstrating that the United States' decision is arbitrary and capricious or otherwise not in accordance with law or this Consent Decree and (ii) that judicial review of EPA's decision shall be on the record of the items relied upon by EPA in making the disputed decision and the items submitted by the parties during the informal negotiations pursuant to Paragraph 46. All such items shall be submitted to the Court.

49.     Where the nature of the dispute is such that a more timely resolution of the issue is required, either party may seek a shortened schedule by motion to this Court.

50.     Notwithstanding any other provision of this Consent Decree, in dispute resolution, this Court shall not draw any inferences nor establish any presumptions adverse to either Party as a result of the entry of this Consent Decree, actions required by this Consent Decree, invocation of dispute resolution, or the Parties' inability to reach agreement.

51.     As part of the resolution of any dispute pursuant to this Section, the parties, by agreement, or this Court by order, may extend or modify the schedule for completion of Work under this Consent Decree to account for the delay in the Work that occurred as a result of dispute resolution. Invocation of the dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Transco under this Consent Decree not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue as provided in Section XIII (Stipulated Penalties) but payment shall be stayed pending resolution of the dispute according to the procedures set forth in Section XIII (Stipulated Penalties). In the event that Transco does not prevail on the disputed issue, it shall be liable for any stipulated penalties demanded as provided in Section XIII (Stipulated Penalties).

## XIII. STIPULATED PENALTIES

52.     Transco shall be liable for stipulated penalties in the amounts set forth in

Paragraph 53 for failure to comply with the requirements of this Consent Decree, unless excused

under Section XI (Force Majeure). "Compliance" by Transco shall include, but not be limited to,

completion of the Work required by this Consent Decree (including Work required by an

Attachment and Work required by an item approved under Section IX (Review of Submittals)).

Completion of the Work shall mean that all required Work is completed by the deadline specified

in the applicable schedules and in accordance with all applicable requirements of this Consent

Decree including Paragraph 11.

53.     The stipulated penalty amounts set forth in this Paragraph shall apply as follows:

Category A stipulated penalties shall apply to any failure by Transco (a) to
comply with any deadline for the submission of any item or the conduct of any activity
required by Attachments A, B, C, or D of this Consent Decree or (b) to timely pay the
civil penalty required by Section XIV (Civil Penalty).

Category B stipulated penalties shall apply to violations of Paragraph 83.

Category C stipulated penalties shall apply to all requirements of this Consent
Decree that do not fall within Categories A, B, or D.

Category D stipulated penalties shall be applied in lieu of Category A stipulated
penalties only during the pendency of dispute resolution pursuant to Section XII (Dispute
Resolution) regarding a decision by EPA pursuant to Section IX (Review of Submittals)
regarding the following issues and related schedules:

•       Conceptual Models– included in the Phase 1 Report submitted pursuant to
Section I of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the
Transco Matter).

•       Sampling Plans– included in the Phase 1 Report submitted pursuant to Section I
of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco
Matter).

- Determinations of AOC-specific Hazardous Constituents and related levels of concern and standards for industrial soil– included in a submittal made pursuant to footnote 2 of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Soil Assessment– included in the Phase 2 Report submitted pursuant to Section II of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Groundwater Assessment– included in the Phase 2 Report submitted pursuant to Section II of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Groundwater Monitoring System– included in the Phase 2 Report submitted pursuant to Section II.A.4 of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Corrective Action for Soil– included in the Phase 2 Report submitted pursuant to Section II.B of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Determinations of Ecotox Thresholds– included in a submittal made pursuant to footnote 3 of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Surface Water Assessment–included in the Phase 2 Report submitted pursuant to Section II of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Termination of Groundwater Monitoring–included in the Phase 3 Report submitted pursuant to Section III.A of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Migration Evaluation–included in the Phase 3 Report submitted pursuant to Section III of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Alterations of the List of Groundwater Analytes– included in the Phase 3 Report submitted pursuant to Section III.A of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Corrective Action for Groundwater– included in the Phase 3 Report submitted pursuant to Section III.D of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Termination of Groundwater Monitoring in Annual Report– included in the Phase 3 Annual Report submitted pursuant to Section III.E of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

- Proposed $C_i$ at HQ=1 for Constituents of Concern Not On Table I-1 – submitted pursuant to Attachment I to Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter) where a $C_i$ at HQ=1 is not set forth on Table I-1.

- Revisions or Reevaluations of the Above– Revisions to, or reevaluation of, any of the above items and related schedules that are submitted according to Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter).

| CATEGORIES OF STIPULATED PENALTIES | |
|---|---|
| **Category A Stipulated Penalties** | |
| **Number of calendar days after deadline** | **Amount of stipulated penalty** |
| 1st through 30th day | $1,250 per day |
| After 30th day | $2,000 per day |
| **Category B Stipulated Penalties** | |
| One time stipulated penalty | $1,000 – $5,000 at the United States' discretion |
| **Category C Stipulated Penalties** | |
| **Number of calendar days after deadline** | **Amount of stipulated penalty** |
| 1st through 30th day | $1,000 per day |
| After 30th day | $1,500 per day |
| **Category D Stipulated Penalties** | |
| **Number of calendar days after deadline** | **Amount of stipulated penalty** |
| 1st day and thereafter | $500 per day |

54.     Stipulated penalties shall not be assessed solely for failure to comply with the requirements of Paragraph 11.

55.     Except as specifically provided in this Paragraph, all stipulated penalties shall begin to accrue on the day after performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  If Transco fails to timely perform Work required by a decision under Section IX (Review of Submittals) and Transco has invoked dispute resolution pursuant to Section XII (Dispute Resolution) with regard to the portion of the decision which contains the requirement to perform the Work which Transco failed to perform timely, stipulated penalties shall not accrue during the following periods:

(a)     If informal negotiations pursuant to Paragraph 46 fail to resolve a dispute, the period, if any, from fifteen (15) days after the end of informal negotiations through the time EPA issues a written statement of its position on the issue or issues specified in the Notice of Dispute pursuant to Paragraph 46;

(b)     The period from five (5) days after the date the final brief is submitted in any judicial appeal pursuant to Paragraph 47 through the date that the District Court issues its decision on the matter; and

(c)     The period of any extensions in the briefing schedule beyond what is provided in Paragraph 47.

Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

56.    All penalties owed under this Section shall be due and payable within thirty (30) days of Transco's receipt from the United States of a demand for payment of the penalties, unless Transco invokes the dispute resolution procedures under Section XII (Dispute Resolution).

57.    Payment of stipulated penalties shall be tendered to the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Texas, P.O. Box 61129, Houston, Texas 77208 and shall be accompanied by a letter specifying the specific stipulated penalty provision involved, and a description of the violation(s) of this Consent Decree for which the stipulated penalties are being tendered.  Payment shall be made by money order, cashier's check or certified check payable to "Treasurer, United States of America," and shall reference U.S. v. Transcontinental Gas Pipe Line Corp. (S.D. Tex.), the civil action number assigned to the case, USAO File 2002v00068, DOJ Case Number 90-7-1-909.  Simultaneously, a copy of the payment document and letter shall be sent to the United States as provided in Section XX (Notices and Submittals).

58.    Notwithstanding any other provision of this Section, the United States may, in its discretion, waive in whole or in part stipulated penalties that have accrued pursuant to this Consent Decree.

59.    The payment of stipulated penalties shall not alter in any way Transco's obligation to complete the performance of the Work required under this Consent Decree.

60.    Penalties shall continue to accrue as provided in Paragraph 53 during the pendency of any dispute resolution proceeding under Section XII (Dispute Resolution) but need not be paid until the following:

     a.      If the dispute is resolved by agreement or by a decision by EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid within fifteen (15) days of the agreement or receipt of a decision by EPA;

     b.      If the dispute is appealed to the District Court and the United States prevails in whole or in part, Transco shall pay all accrued penalties determined by the District Court to be owed within thirty (30) days of receipt of the District Court's decision or order, except as provided in Subparagraph c;

     c.      If the District Court's decision is appealed by Transco, Transco shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within thirty (30) days of receipt of the District Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every thirty (30) days; however, in no case shall stipulated penalties accrue in excess of  $50,000 for violations of the requirements of the disputed item while an appeal is pending.  Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the United States Attorney's Office for the Southern District of Texas or to Transco to the extent that it prevails; and

     d.      If the District Court's decision is appealed by the United States, no stipulated penalties shall accrue while an appeal is pending.  Interest shall accrue and be compounded annually during the pendancy of any appeal by the United States of a decision by the District Court at the rate established pursuant to 28 U.S.C. § 1961 on any stipulated penalties that have accrued but not yet been paid.  If Transco prevails before

the District Court and no appeal is taken by the United States, no stipulated penalties
shall be due.

61.     a.      If Transco fails to pay stipulated penalties when due, the United States
may institute proceedings to collect the penalties, as well as interest. If such a proceeding
is instituted, Transco shall be liable to reimburse the United States for its reasonable costs
and attorney fees connected with the proceeding. Transco shall pay interest on the unpaid
balance, which shall begin to accrue on the date of demand made pursuant to
Paragraph 56 at a rate equal to the rate established pursuant to 28 U.S.C. § 1961.

         b.      In addition to assessing stipulated penalties as provided in this Section, the
United States shall also have all rights provided by federal, state, or local law to seek any
and all other remedies or sanctions available to it for any violation by Transco of this
Consent Decree. If the United States collects a stipulated penalty under this Decree and
subsequently seeks and is awarded a monetary civil penalty for the same act or omission,
Transco shall receive a credit against the civil penalty up to the amount of the stipulated
penalty paid by Transco to the United States.

## XIV.  CIVIL PENALTY

62.     Within thirty (30) days of the Date of Entry, Transco shall pay a civil penalty in
the amount of $1,400,000 (One million four hundred thousand dollars). Payment shall be made
by Electronic Funds Transfer ("EFT") to the United States Department of Justice, referencing
United States v. Transcontinental Gas Pipe Line Corp. (S.D. Tex.), the civil action number
assigned to the case, USAO File Number 2002v00068, and DOJ Case Number 90-7-1-909. The
costs of such electronic funds transfer shall be the responsibility of Transco. Payment shall be

made in accordance with instructions provided to Transco by the Financial Litigation Unit of the

U.S. Attorney's Office in the Southern District of Texas. Any funds received after 11:00 a.m.

(EST) shall be credited on the next business day. Transco shall provide notice of the date and

amount of the payment to the United States as provided in Section XX (Notices and Submittals).

The notice shall reference United States v. Transcontinental Gas Pipe Line Corp. (S.D. Tex.), the

civil action number assigned to the case, USAO File Number2002v00068, and DOJ Case

Number 90-7-1-909.

63.     Transco shall not seek to make any part of the civil penalty tax deductible .

64.     If Transco fails to pay the civil penalty as required by Paragraph 62, the United

States may institute proceedings to collect the civil penalty. If such a proceeding is instituted,

Transco shall be liable to reimburse the United States for its costs and attorney fees connected

with the proceeding. In addition, if Transco fails to pay the full amount of the civil penalty as

required by Paragraph 62, then interest on the civil penalty shall accrue from the Date of Entry of

this Consent Decree on any unpaid portion of the penalty at the rate established pursuant to

28 U.S.C. § 1961 and shall continue to accrue until full payment is made. Interest shall be

compounded annually. Transco shall also be liable for stipulated penalties pursuant to

Section XIII (Stipulated Penalties) for any failure to comply with the requirements of Paragraph

62.

## XV.   COVENANT NOT TO SUE BY THE UNITED STATES OF AMERICA

65.     In consideration of the Work performed and that will be performed under the

terms of this Consent Decree by Transco and the payments that Transco will make pursuant to

Paragraph 62 (Civil Penalty) and subject to Paragraph 66 of this Section, the United States

covenants not to sue or to take administrative action against Transco for civil claims for penalties and/or injunctive relief for the violations set forth below that arose on or before the Date of Lodging of this Consent Decree:

  A.  Violations of RCRA Sections 3002, 3003, 3004, 3005, 3006, and 3008(a), (g), and (h), 42 U.S.C. §§ 6922, 6923, 6924, 6925, 6926, and 6928(a), (g), and (h), and the regulations promulgated thereunder (including but not limited to any claim that Transco failed to obtain or was obligated to obtain a permit for the AOCs under any federally enforceable RCRA requirement) at the AOCs;

  B.  Violations of CWA Sections 301 and 309(b), (d), and (g), 33 U.S.C. §§ 1311 and 1319(b), (d), and (g), and the regulations promulgated thereunder at the Compressor Stations listed in Attachment I (Table of CWA Compressor Stations); and

  C.  Violations of TSCA Sections 6, 15, and 17, 15 U.S.C. §§ 2605, 2614, and 2616, and the regulations promulgated thereunder, at the Compressor Stations listed in Attachment G (Table of PCB Stations); provided, however, insofar as the PCB remedial work to be conducted pursuant to Attachment C (Station 150 PCB Remedial Plan) results in use authorizations under 40 C.F.R. § 761.30(p), Transco is not released from future disposal obligations under TSCA Section 6, 15 U.S.C. § 2605, and the regulations promulgated thereunder.

The United States further covenants not to sue or take administrative action under RCRA, CWA, or TSCA against Transco for any civil or administrative violations set forth above that first accrued prior to the Date of Lodging and continue after the Date of Lodging and for any claim of failure to obtain a permit under any federally enforceable RCRA requirement for treatment,

storage, or disposal of hazardous wastes in an AOC where the obligation to obtain such permit

arises as a result of carrying out the Work required by this Consent Decree.  These covenants not

to sue are conditioned upon the satisfactory performance by Transco of its obligations under this

Consent Decree.  These covenants not to sue shall take effect upon the receipt by the United

States of the full payment required by Paragraph 62 (Civil Penalty).  These covenants not to sue

extend only to Transco and do not extend to any other person.

66.     Subject to the covenants not to sue in Paragraph 65, the United States retains all

authority and reserves all rights to take any and all response actions authorized by law to protect

human health and the environment.  Except as otherwise provided in Paragraph 65, the entry of

this Consent Decree shall not limit or constitute a waiver or settlement of any claims or

otherwise preclude the rights or remedies of the United States.  This Consent Decree is without

prejudice to the United States' rights and remedies including, but not limited to, the following:

a.      Claims based on a failure by Transco to meet a requirement of this Consent
        Decree;

b.      Claims of liability to the United States for damages for injury to, destruction of, or
        loss of natural resources, including claims under CERCLA Section 107(a),
        42 U.S.C. § 9607(a), and CWA Section 1321, 33 U.S.C. § 1321;

c.      Claims under CERCLA for response costs, as defined by CERCLA
        Section 101(23) - (25), 42 U.S.C. § 9601(23)-(25);

d.      Claims of criminal liability;

e.      Claims of liability for violations of federal or state law that occur during or after
        implementation of the Work, except as otherwise provided in Paragraph 65; and

f.      Claims of liability resulting from the release or threat of release of hazardous
        substances, pollutants or contaminants at the Site after the effective date of this
        Agreement not within the definition of Existing Contamination;

67.    Except as expressly provided in this Consent Decree, the United States shall retain all authority and reserve all rights to take any and all response actions authorized by law, including, but not limited to, CERCLA Sections 104 and 106, 42 U.S.C. §§ 9604 and 9606.

68.    Except as specifically provided in Paragraphs 11 and 65, this Consent Decree shall not be construed as a ruling or determination on any issue related to any federal, state, or local permit which Transco is required to obtain for any reason including, but not limited to, permits required under RCRA, permits required to implement this Consent Decree, and permits required to initiate, alter, or continue operations of Compressor Stations, and Transco shall remain subject to all such permitting requirements.  Transco shall be responsible for obtaining any federal, state, or local permit(s) for any activity at its facilities, including, but not limited to, those necessary for performance of the Work required by this Consent Decree.

69.    Except as provided in Paragraph 65, the United States hereby reserves all statutory and regulatory powers, authorities, rights, remedies, both legal and equitable, civil, criminal, or administrative, including those that may pertain to Transco's failure to comply with any of the requirements of this Consent Decree, RCRA, TSCA, CWA, or state law including, without limitation, additional enforcement action and the assessment of penalties under RCRA Section 3008, 42 U.S.C. § 6928, against Transco, its officers and directors.  Except as provided in this Consent Decree, Transco hereby reserves all of its defenses to any future claims or assertions of the United States.

70.    Nothing in this Consent Decree is intended either to create any rights in or grant any cause of action to any person not a Party to this Consent Decree, or to release or waive any

claim, cause of action, demand, or defense in law or equity that any Party to this Consent Decree may have against any person(s) or entity not a Party to this Consent Decree.

71.     Nothing in this Consent Decree is intended to release or waive any claim, cause of action, demand, or defense in law or equity that any third party (specifically including, but not limited to, any state) may have against Transco.

## XVI.   COVENANTS BY TRANSCO; EFFECT OF SETTLEMENT

72.     Transco hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the performance of the Work or with respect to this Consent Decree, including any claims arising out of actions taken by Transco.  Transco reserves, and this Consent Decree is without prejudice to, claims arising after the Date of Lodging of this Consent Decree against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States would be liable to the claimant in accordance with the law of the place where the act or omission occurred.   The foregoing applies only to claims which are brought pursuant to, and which a waiver of sovereign immunity is found in, any statute other than TSCA, RCRA, CERCLA, or CWA.

73.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Facility, Transco shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other

defenses based upon any contention that the claims raised by the United States should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenant not to sue set forth in Section XV (Covenant Not to Sue by the United States of America).

74.     Nothing in this Consent Decree shall be construed to limit any claims, causes of action, or any rights which Transco may have against any person not a Party to this Consent Decree.

## XVII. FINANCIAL ASSURANCES

75.     Within sixty (60) days after the end of the first Transco fiscal year after the Effective Date of this Consent Decree, Transco shall submit to EPA for review under Section IX (Review of Submittals) an assurance of its financial ability to complete the Work required by this Consent Decree. The financial assurances submitted by Transco shall consist of a certification from Transco's chief financial officer, or an authorized representative, stating that Transco is financially capable of completing the remaining Work required by the Consent Decree to the best of that person's knowledge and belief, along with a copy of Transco's audited financial statement for the most recent fiscal year then available.  Transco's submittal shall include an itemized estimate of the cost, including capital, operation, and maintenance costs, of completing the Work required by this Consent Decree.  Transco may, at its election or if required pursuant to Paragraph 78 or 79, substitute an alternate form of financial assurance in one or a combination of the forms specified in 40 C.F.R. § 264.143(a)-(f)  If Transco chooses one or a combination of the instruments described in 40 C.F.R. § 264.143(a)-(e), Transco shall submit a copy of the instrument(s) and describe the nature and extent to which the instrument(s) is available to EPA

for the purpose of ensuring the completion of the requirements of this Consent Decree. If Transco chooses the instrument described in 40 C.F.R. § 264.143(f), it shall submit audited financial reports and/or other reliable evidence of its financial assets or the assets of its corporate guarantor.

76.     EPA shall review the submittals described in Paragraphs 75, 78, and 79 pursuant to Section IX (Review of Submittals) and shall notify Transco in writing whether the submitted financial assurance is adequate to ensure financing of the Work. If EPA determines that the submitted financial assurances are inadequate, the notice shall state the basis for that determination and what additional financial assurance is required.

77.     Within thirty (30) days of receipt of a notice that its financial assurance is not adequate and subject only to its right to dispute such determination under Section XII (Dispute Resolution), Transco shall submit to EPA for review under Section IX (Review of Submittals) additional financial assurances as specified in the notice provided pursuant to Paragraph 76.

78.     Annually, within sixty (60) days after the completion of Transco's fiscal year, Transco shall submit for review and approval under Section IX (Review of Submittals) an updated cost estimate that accounts for inflation and any changes in the estimated cost of the Work. The updated cost estimate shall (a) state whether inflation has increased the estimated cost of the Work; and (b) state whether the estimated cost of the Work has otherwise increased. If the estimated cost of the Work has increased, Transco shall also submit additional financial assurances sufficient to cover the increased estimate of the cost in one of the forms specified in Paragraph 75. EPA will review the updated financial assurance pursuant to Section IX (Review of Submittals) in accordance with the procedures set forth in this Section.

79.     In the event that Transco is or reasonably expects that it will be unable to maintain the financial assurance(s) provided pursuant to this Section, Transco shall obtain and submit to EPA alternate financial assurance(s) in one or a combination of the forms of financial assurance listed in Paragraph 75.  Transco shall submit such alternate financial assurances within thirty (30) days of the earlier of (a) the time that Transco determines that it is unable to maintain the original financial assurance(s) or (b) the time that Transco receives information that gives rise to the reasonable expectation that it will be unable to maintain the original financial assurance(s).

80.     Any failure or inability on the part of Transco to demonstrate financial ability to complete the Work shall not excuse performance of any requirements of this Consent Decree.

## XVIII.     INDEMNIFICATION OF THE UNITED STATES OF AMERICA

81.     Except as provided in Paragraph 72, Transco waives all claims against the United States (a) for damages or reimbursement and (b) for set-off of any payments made or to be made to the United States which arise from or on account of any contract, agreement, or arrangement between Transco and any person for performance of the Work, including, but not limited to, claims on account of construction delays.  In addition, Transco shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement or arrangement between Transco and any person for performance of the Work, including, but not limited to, claims on account of construction delays.  If the United States seeks to be indemnified by Transco pursuant to this Section, it shall give Transco written notice of any claims for which indemnification is sought and shall consult with Transco prior to settling such claim.

## XIX.   ACCESS TO INFORMATION; QUALITY ASSURANCE QUALITY CONTROL; AND RECORD RETENTION

82.     Throughout all sample collection and analysis activities, Transco shall comply with Attachment B (Quality Assurance Project Plan for the Protocol for the Pits and Scrubber Line Leaks in the Transco Matter), the quality assurance and quality control requirements of Attachment C (Station 150 PCB Remedial Plan) and Attachment D (Protocol for Remaining Stormwater Sampling for Transcontinental Gas Pipe Line Corp. ("Transco") Compressor Stations), and other items approved pursuant to Section IX (Review of Submittals) as applicable. If Transco determines that modification to the Attachment B or the quality assurance and quality control requirements of Attachments C (Station 150 PCB Remedial Plan) or D (Protocol for Remaining Stormwater Sampling for Transcontinental Gas Pipe Line Corp. ("Transco") Compressor Stations) is necessary, Transco shall submit to EPA for review and approval a proposed modification and full explanation of the basis for the proposed modification.

83.     Until three (3) years after Transco's receipt of EPA's notification granting a Certificate of Completion pursuant to Paragraph 39 of Section X (Certificate of Completion) for any Facility, Transco shall maintain and provide to EPA, upon request, subject to the protections for privileged and/or confidential business information provided by Paragraph 84, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities pursuant to this Consent Decree at any such Facility including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Nothing herein shall be construed as a waiver of any attorney-client, work product, or

confidential business information privilege or doctrine that Transco might otherwise possess.  At least sixty (60) days prior to destruction or disposal of any records covered by this Paragraph, Transco shall notify EPA and, if EPA so requests, make such records available to EPA for inspection or retention.

84.     Transco may assert that the documents or information required to be provided to the United States pursuant to this Consent Decree are privileged and/or entitled to protection as confidential business information as provided in this Paragraph.  In no case shall Transco withhold from EPA based on a claim of privilege documents, reports, or other information required to be created or generated pursuant this Consent Decree or data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other information evidencing conditions at or around any Facility.

A.     Transco may assert business confidentiality claims covering part or all of the documents or information required to be provided to EPA pursuant to this Consent Decree as provided in 40 C.F.R. § 2.203.  Information determined by EPA to be confidential shall be disclosed only to the extent permitted by 40 C.F.R. Part 2.  If no such confidentiality claim accompanies the information when it is submitted to EPA, the information may be made available to the public by EPA without further notice to Transco.  Analytical data generated pursuant to this Consent Decree shall not be claimed as confidential.

B.     In the event Transco believes that information, data, or other material accessible to EPA and/or its representatives under this Consent Decree is privileged,

Transco may assert that claim by providing to EPA within thirty (30) days after the request the following information for each item as to which a privilege is claimed:

        (i)      A description of the information, data, or other material which contains sufficient information to allow the District Court to determine whether the claimed privilege applies; if the material at issue is a document, Transco shall, at a minimum, provide the following information in as much detail as possible without revealing any information claimed privileged:  (1) the title of the document; (2) the date of the document; (3) the name and title of the author of the document; (4) the name and title of each addressee and recipient; and (5) a description of the contents of the document; and

        (ii)     A statement of the specific privilege(s) claimed and the basis for the claim.

If Transco fails without good cause to timely provide the information required by this Subparagraph, it waives any claim of privilege with respect to the specific information, data, or other material for which it failed to timely provide the information.  If EPA objects to Transco's claim that the information, data, or other material is privileged, it may file a motion to compel access to the material.

## XX.   NOTICES AND SUBMITTALS

85.     Unless otherwise specified in this Consent Decree, whenever, under the terms of this Consent Decree, written notice is required to be given or any document (except documents submitted for review and approval under Section IX (Review of Submittals)) is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified

below, unless those individuals or their successors give notice of a change to the other Party in

writing.  All notices and submittals from Transco shall be timely if sent on or before the date

due, unless otherwise provided.  All notices from the United States shall be considered effective

upon receipt by Transco, unless otherwise provided.  Written notice as specified in this

Paragraph shall satisfy any written notice requirement of the Consent Decree:

> As to the United States:
> Chief
> Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, D.C.  20044-7611
> Re: DJ # 90-7-1-909
>
> Director of the Multimedia Enforcement Division
> Office of Enforcement and Compliance Assurance
> Office Regulatory Enforcement
> United States Environmental Protection Agency
> USEPA Ariel Rios Bldg (2248-A)
> 1200 Pennsylvania Ave, N.W.
> Washington, D.C.  20004
>
> As to EPA:
> Director
> Multimedia Enforcement Division
> Office of Enforcement and Compliance Assurance
> Office Regulatory Enforcement
> United States Environmental Protection Agency
> USEPA Ariel Rios Bldg (2248-A)
> 1200 Pennsylvania Ave, N.W.
> Washington, D.C.  20004

As to Transco:

Randall R. Conklin
Vice President and General Counsel
Transcontinental Gas Pipe Line Corporation
2800 Post Oak Blvd (77056)
P.O. Box 1396
Houston, TX 77251

Daniel L. Merz
Manager, Environmental
Transcontinental Gas Pipe Line Corporation
2800 Post Oak Blvd (77056)
P.O. Box 1396
Houston, TX 77251

86.     Nothwithstanding the foregoing, all notices and submittals required to be made by

Transco relating to the performance of Work shall be sent to the EPA Project Coordinator.  The

EPA Project Coordinator is the designated EPA official with authority to notify Transco

concerning any approvals or responses required to be given by EPA.  The Project Coordinator

shall be:

EPA Project Coordinator
MICHAEL CALHOUN
Environmental Scientist

| Regular Mail | Fed Ex |
|---|---|
| USEPA Ariel Rios Bldg. (2248-A) | USEPA Ariel Rios, Rm 3121 |
| 1200 Pennsylvania Ave., N.W. | 1200 Pennsylvania Ave., N.W. |
| Washington, D.C. 20004 | Washington, D.C. 20004 |

Phone: 202/564-6031
Fax: 202/564-0010 or 202/564-9001
E-mail: calhoun.michael@epa.gov

EPA may change its Project Coordinator at any time by providing written notice to Transco.

87.     Unless otherwise provided for in this Consent Decree or by agreement between

EPA and Transco, Transco shall notify EPA's Project Coordinator by telecopier or email at least

ten (10) days prior to engaging in any field activities specified in Attachments A (Protocol for the

Pits and Scrubber Line Leaks in the Transco Matter), C (Station 150 PCB Remedial Plan) and in any related workplans, schedules, reports, or other documents approved under this Consent Decree, including but not limited to well drilling, installation of equipment, and sampling. No notice is required for the field activities specified in Attachment D (Protocol for Remaining Stormwater Sampling for Transcontinental Gas Pipe Line Corp. ("Transco") Compressor Stations). EPA may, at its discretion, waive the notice requirements of this Paragraph. At the request of EPA, Transco shall provide split samples to EPA or allow EPA or its authorized representatives to take samples or split or duplicate samples of any samples collected by, or on behalf of, Transco pursuant to the implementation of the Consent Decree.

## XXI. MODIFICATION

88.     The following changes to this Consent Decree may be made by written agreement between EPA and Transco:

A.      Modification of schedules for the Work, except modifications to the date in Table 3 of Attachment A (Protocol for the Pits and Scrubber Line Leaks in the Transco Matter) for the start of work at Compressor Stations;

B.      Modification of the Attachments that do not materially alter the document; and

C.      Modification of items approved under Section IX (Review of Submittals).

89.     No material modifications, including waivers of the requirements of this Consent Decree, shall be made to this Consent Decree without written notification to and written approval of each of the United States, Transco, and the Court.

90.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

91.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public comment in accordance with U.S. Department of Justice policy, including 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if comments by the public regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

92.     Transco consents to the entry of this Consent Decree in its present form without further notice.

93.     If for any reason the Court should decline to approve and enter this Consent Decree in the form presented, either Party may withdraw from the agreement and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXIII.     COSTS

94.     Except as otherwise provided in this Consent Decree, each Party to this action shall bear its own costs and attorneys' fees in the actions resolved by this Consent Decree.

## XXIV.     RETENTION OF JURISDICTION

95.     This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling either of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or

modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XII (Dispute Resolution) hereof.

## XXV. TERMINATION

96.     This Consent Decree shall terminate upon the filing of a Joint Stipulation of Termination or after a Motion to Terminate the Consent Decree has been granted by the Court. If Transco has received certificates of completion for all facilities and paid all civil penalties, stipulated penalties, and other sums due under this Consent Decree, the Parties may file a Joint Stipulation of Termination which shall automatically terminate this Consent Decree.  In the alternative, either Party may file a motion to terminate, but no such motion shall be granted unless the following conditions have been met:

  a.     EPA has issued a Certificate of Completion for all Facilities pursuant to Paragraph 39;

  b.     Transco is in compliance with the terms of the Consent Decree as of the date of termination; and

  c     Transco has completed all Work required by the Consent Decree and has paid all civil penalties, costs, damages, stipulated penalties, and other sums due under this Consent Decree.

Any Motion to Terminate this Consent Decree shall be filed with the Court and copies served upon the other Party.  Either Party may oppose the Motion to Terminate within ninety (90) days of the date of service.

97.     Termination of this Consent Decree shall not affect (A) any continuing obligations of Transco, including record retention obligations under Paragraph 83 and obligations related to Institutional Controls under Section VIII (Access to Transco Facilities, Institutional Controls, and Notice to Successors-In-Title) (including obligations of Transco to

enforce easements and deed restrictions under Paragraphs 23 and 24), or (B) the covenants set

forth in Section XV (Covenant Not To Sue by the United States of America) and Section XVI

(Covenants by Transco; Effect of Settlement).

## XXVI.        SIGNATORIES

98.             The Assistant Attorney General for the Environment and Natural

Resources Division and each undersigned representative of Transco certifies that he or she is

fully authorized to enter into the terms and conditions of this Consent Decree and to execute and

legally bind such Party to this document.

SO ORDERED THIS _14th_ DAY OF _May_____, 2002,


_____
United States District Judge

**FOR THE UNITED STATES OF AMERICA:**


_Tom Sansonetti_

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


_Michael T. Donnellan_

MICHAEL T. DONNELLAN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-4226


MICHAEL T. SHELBY
United States Attorney
Southern District of Texas


_Gordon Speights Young_

GORDON S. YOUNG
Assistant United States Attorney
Southern District of Texas
P.O. Box 61129
Houston, Texas 77208
(713) 567-9501


Consent Decree                    **Page 60 of 65**      <u>U.S. v. Transcontinental Gas Pipe Line Corp.</u> (S.D. Tex.)

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:**

_for Sylvia K. Lowrance_

SYLVIA K. LOWRANCE
Acting Assistant Administrator
United States Environmental Protection Agency


ROBERT PARRISH
Attorney/Advisor
United States Environmental Protection Agency
Ariel Rios Bldg. (2248-A)
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 564-6946

**FOR TRANSCONTINENTAL GAS PIPE LINE CORPORATION:**

GARY D. LAUDERDALE
Senior Vice President and General Manager
Transcontinental Gas Pipe Line Corporation
2800 Post Oak Blvd (77056)
P.O. Box 1396
Houston, TX 77251

DANIEL L. MERZ
Manager, Environmental
Transcontinental Gas Pipe Line Corporation
2800 Post Oak Blvd (77056)
P.O. Box 1396
Houston, TX 77251

**FOR TRANSCONTINENTAL GAS PIPE LINE CORPORATION (Con't):**

BRETT HUGHES, Esq.
Transcontinental Gas Pipe Line Corporation
One Williams Center, Suite 4100
Tulsa, OK 74172

Counsel for Transcontinental Gas Pipe Line
Corporation

**FOR TRANSCONTINENTAL GAS PIPE LINE CORPORATION (Con't):**

BOLIVAR C. ANDREWS, Esq.
Attorney At Law
5005 Woodway, Suite 210
Houston, TX 77056

Counsel for Transcontinental Gas Pipe Line
Corporation

**FOR TRANSCONTINENTAL GAS PIPE LINE CORPORATION (Con't):**

ANGUS MACBETH, Esq.
TIMOTHY K. WEBSTER, Esq.
Sidley, Austin, Brown, & Wood
1501 K Street, N.W.
Washington, D.C.  20005

Counsel for Transcontinental Gas Pipe Line
Corporation